W. H. KOKERNOT ET AL V. HOMER O. GILSTRAP ET UX.

No. A-186. Decided April 4, 1945.
Rehearing overruled May 23, 1945.
(187 S. W., 2d Series, 368.)

596

W. E. *Jones* and R. L. *Whitehead,* both of Longview, and *Coleman Gay,* of Austin, for petitioner.

J. N. *Saye* and W. T. *Saye,* both of Longview, for respondents.

MR. JUDGE BREWSTER, of the Commission of Appeals, delivered the opinion for the Court.

This is an action in trespass to try title brought by Homer Gilstrap et ux, respondents, against W. H. Kokernot et al, petitioners. A trial court judgment non obstante veredicto for respondents was affirmed by the Court of Civil Appeals. 180 S. W. (2d) 183.

After the conventional allegations with respect to the real estate involved, a residence in Longview, respondents pleaded in the alternative that on February 14, 1941, they made a written contract with Walter H. Kokernot, Jr., and his wife, whereby the Gilstraps agreed to sell, and the Kokernots to buy, the residence with the furniture and household goods therein for $5,181.00, $4,500.00 for the residence and $681.00 for the furniture and household goods; that the Kokernots were to pay $500.00 cash, to assume an outstanding deed of trust indebtedness of $2,850.00 guaranteed by the Federal Housing Administration (FHA), and to execute a note for $1,831.00 payable to the order of the Gilstraps on or before six months after date; that this $1,831.00 note could be extended for periods of six months by the payment of $400.00 during the last preceding six months; that the Gilstraps agreed to execute and did execute a deed conveying the residence to the Kokernots, which was filed for record on February 24, 1941; that the Kokernots in turn were to execute and did execute to the Gilstraps a deed to the residence, which was not to be placed of record unless and until the Kokernots defaulted in the payment of the $1,831.00; that in the event of default all payments theretofore made

would be considered as rent and the Gilstraps would "become the absolute owners of both the real and personal property," the deed could be recorded and the Kokernots would execute a bill of sale to the furniture and household goods; that the Kokernots defaulted on a $400.00 payment due February 14, 1942, so their deed to the Gilstraps was filed for record on March 30, 1942.

A copy of this contract was attached to the petition as an exhibit.

Petitioners answered, both in abatement and to the merits, that the alleged agreement was in violation of FHA rules forbidding any second lien against property where it approved and insured a first lien, as it had done in this case; that both Kokernot and Gilstrap had made a representation to FHA that there was no second lien; that, therefore, both the agreement and the purported deed relied on by the Gilstraps were void.

In overruling petitioners' contention that the contract and deed transaction of date February 14, 1941, providing for additional money to be paid by the Kokernots, was against the FHA rule not to carry loans where a second lien existed and that both the contract and deed were void under the National Housing Act (Title 12, Chap. 13 U. S. C. A. Subchapters V and VI, Federal Code), which prohibits the making of any false statements in securing FHA loans, the court of civil appeals observed, "It is to be noted that the trial court was not called on to give effect to the contract. The suit was in trespass to try title, with an alternative plea relating to the contract, and by reason of the deed having been executed and delivered by W. H. Kokernot, Jr., and his wife to the Gilstraps, the Gilstraps had been reinvested with title and it only remained for the court to exercise its power to place them in possesison of the premises described in the deed. Spangler v. Spangler, 26 S. W. (2d) 463; Hall v. Edwards, 222 S. W., 167." We are not in accord with that view.

Although respondents did plead the contract in the alternative, it is clear that they cannot recover on their statutory allegations in trespass to try title alone. The parties stipulated that the Gilstraps were the common source of title. Then respondents offered, as Plaintiffs' Exhibits, (1) a general warranty deed of date February 24, 1941, executed by the Gilstraps conveying the property in controversy to the Kokernots, (2) a general warranty deed of date February 14, 1941, executed by

the Kokernots conveying the same to the Gilstraps, and (3) the alleged contract of date February 14, 1941. With the Gilstraps, the admitted common source, claiming under the deed from the Kokernots of date February 14, 1941, it is obvious that they could not recover in the face of their deed to the Kokernots of date of February 24, 1941, unless they destroyed the force of the latter instrument. This they attempted by proof of the contract and the circumstances of its execution, and it was thus the illegality of the transaction was made to appear.

The contract recited that the Gilstraps "have this day sold and conveyed" the residence to the Kokernots; that the consideration was $500.00 cash, the assumption by the Kokernots of a lien indebtedness of approximately $2,850.00 guaranteed by the Federal Housing Administration, and a promissory note for $1,831.00 executed by the Kokernots payable to the Gilstraps on or before six months; that "concurrently with the delivery hereof" the Kokernots would execute and deliver to the Gilstraps a sufficient warranty deed" to said property, "which deed shall be by them kept and withheld from record until the maturity of said note for $1,831.00"; that if the note was paid at maturity the Gilstraps would return the deed to the Kokernots without recording it, and the residence would become "the absolute property" of the latter, "but, however, should second parties (Kokernots) fail to pay said $1,831.00 note in full at its maturity, then first parties may record said deed, and shall be and become the fee simple owners of said real property."

█ Thus it appears both from respondents' pleadings and from the contract that the relationship of debtor and creditor was created between them and petitioners to the extent of $1,831.00 and that the deed under which respondents claim was to become effective only in the event petitioners failed to pay the debt. Its office was to secure the debt, hence it was a mortgage. See Parmenter v. Kellis (Civ. App.), 153 S. W. (2d) 965 (er ref.), and the authorities there cited.

So we are confronted by petitioners' point that the "agreement was fraudulent and void as against public policy since it was in violation of the Federal laws and rules governing the transactions of and with the Federal Housing Administration as set out in Title 12, Chapter 13, Sub-chapters V and VI of the Federal Code."

Respondents offered in evidence as their Exhibit 9 a letter of date February 14, 1941, to Federal Housing Administration,

Dallas, Texas, which read as follows: "In accordance with your request, we state that on this date, namely, Feb. 14th, 1941, Mr. Walter. H. Kokernot, Jr., of Longview, Texas, has paid us the down payment of $1,500.00 in cash on the house and lots he purchased from us located at 610 Butler Drive, Longview, Texas; Lots 8 & 9, Blk. 12, Owings Heights Addition, City of Longview, Gregg County, Texas. Mr. Kokernot agrees to assume the first mortgage indebtedness formerly owned by us on this property through the Jacksonville Building & Loan Association of Jacksonville, Texas, which is a FHA insured loan, payable monthly at $29.72. Mr. Kokernot's payment of such payment to begin March 1st, 1941. *There is no second lien on the property due to this trade.*" (Italics ours.) Then appear the signatures of the Gilstraps, following which is this notation: "The above is true and correct and I attest to same. Walter K. Kokernot, Jr."

In explanation of this statement that their deal with the Kokernots created "no second lien on the property," Mrs. Gilstrap testified, in response to questions from her own counsel, that she and her husband signed the letter at the request of Kokernot because, otherewise, "his loan by the FHA would be rejected. * * * That's the only reason we did that, so his loan would not be rejected. It would have been rejected if he hadn't gotten this in by midnight." She said it was signed the same day that the contract was executed. Gilstrap testified, on cross examination, that this representation was made to the FHA "for the purpose of. having Mr. Kokernot take this loan over and be responsible instead of" himself. When asked, "You had to represent to the Federal Housing Administration that you had received the $1500 and that there would be no second liens against it and that this was all that would be against it other than the balance on that lien, didn't you, they wouldn't accept it if you didn't do that, would they?" he answered, "We received a letter from the Jacksonville Building and Loan that made the loan that unless they received a statement that the cash had been paid, that the loan would be null and void after the 15th."

By this testimony the respondents admitted that the representation to the FHA that their transaction with petitioners created no second lien against the property was contrary to the facts and recognized that the representation was in violation of the rules and regulataions of the FHA with respect to loans made by it. Art. 1731, of Title 12, Chapter, U.S.C.A., Banks and Banking, makes it an offense for any person "for the purpose of obtaining any extension or renewal of any loan, advance of credit, or mortgage insured by the said Administration (FHA),

or the acceptance, release, or substitution of any security on such loan, advance of credit, or for the purpose of influencing in any way the action of said Administration" to utter or publish or cause to be uttered or published "any statement, knowing the same to be false."

■ It follows, that, in so far as recovery of title or the enforcement of any lien against the property are concerned, the transaction evidenced by the contract and the deed under which respondents claim title falls within that class of contracts which are held to be illegal and void and upon which a plaintiff cannot recover when it is necessary for him to prove his own illegal acts as a part of his cause of action. The law leaves the parties to such contracts where it finds them. Beer et al v. Landman, 88 Texas, 450, 31 S. W., 805. See 9 Texas Digest, Contracts, keys 138(1), 138(2), and 138(3), for a citation of many authorities, and United States v. Mellon, 96 Fed. (2d) 462 (certiorari denied, 304 U. S., 586, 58 Sup. Ct. 1061, 82 L. Ed. 1547, wherein it is held that loss to the government is not essential to constitute such a representation an illegal act.

Hall v. Edwards and Spangler v. Spangler, supra, are not contrary to our holding. In Hall v. Edwards the plaintiff was held entitled to recover because he showed title in himself through a trustee's deed, in regular chain of title from the sovereignty, which he established wholly independently of the fact that the deed of trust under which the sale was made was executed to secure a note which all parties knew was to be paid out of profits realized from the operation of a house of prostitution. In Spangler v. Spangler the original illegal transaction in which the alleged express trust in land was created had been wholly executed by the exchange of that land for other land in another county, under a new agreement that the trust should be transferred to the newly acquired land, concerning the legality of the title to which there was no question. It was this second trust that the plaintiffs were seeking to enforce.

But in this case the Gillstraps sought to avoid the effect of their deed to the Kokernots of date February 24, 1941, which was ten days after the date of the deed to themselves under which they claim, by testimony that all instruments were in fact executed on February 14, 1941. Unfortunately, in doing that they were compelled to prove the other matters above related, which, taken together, rendered the transaction illegal and nonenforceable. So the courts can grant them no relief.

Our conclusion renders it unnecessary to consider other questions presented by this appeal.

Both judgments below are reversed and judgment is rendered for petitioners.

Opinion adopted by the Supreme Court, April 4, 1945.

Rehearing overruled May 23, 1945.