Jose **ASCENSION** and Mary Gomez Ascension, Appellants,

v.

Fielmon **SAENZ** and G. W. Wilkinson, Appellees.

No. 13799.

Court of Civil Appeals of Texas.

San Antonio.

July 19, 1961.

Rehearing Denied Sept. 6, 1961.

William L. Scarborough, Corpus Christi, for appellants.

H. A. Burnett, Burnett & Burnett, Sinton, for appellees.

POPE, Justice.

Appellants, plaintiffs below, contend that a deed was intended as a mortgage. The

trial court held that the instrument was a deed. We must determine (1) whether appellants' pleadings gave fair notice of the issue stated above, (2) whether their points in the brief preserved the issue, and (3) whether the proof, as a matter of law, established appellants' contention.

Appellants, Jose Ascension and Mary Gomez Ascension, husband and wife, on January 4, 1957, entered into a written installment contract with G. W. Wilkinson by which they agreed to buy and he to sell Lot 2, Block 5, Kline Addition to the City of Gregory in San Patricio County. They paid their installments until they had paid $600 but still owed only $150 principal. During June, 1958, the Ascensions were pressed for funds. On June 10, 1958, Jose Ascension and Fielmon Saenz went to see Wilkinson, the vendor, and the transaction occurred out of which this suit arose. On the back of the contract there was written, "We have returned Lot 2, Block 5 to G. W. Wilkinson and he will sell and deliver deed to Fielmon Saenz." Mr. and Mrs. Ascension signed beneath that statement. Saenz then delivered $190 to Wilkinson, which was the total of the unpaid principal and interest under the contract between Wilkinson and the Ascensions. Wilkinson delivered to Saenz a deed to the lot. The Ascensions later offered to repay the $190, but Saenz refused and claimed that he owned the property.

■ Appellants' first point complains of the trial court's refusal to permit them to file a trial amendment, but appellants have failed to bring the proposed amendment forward in the record. We conclude that the matter was discretionary and that the trial court did not abuse its discretion. Westinghouse Electric Corp. v. Pierce, 153 Tex. 527, 271 S.W.2d 422. However, appellants' pleadings upon which the case was tried sufficiently gave fair notice to the appellees that appellants claimed the deed was a mortgage. Rule 47, Texas Rules of Civil Procedure. Appellants described the land, they alleged that they contracted to buy it from Wilkinson and paid $600 on

the consideration but owed $190 on June 13, 1958. They alleged that Saenz and Wilkinson agreed to help appellants, that Saenz advanced the money to Wilkinson, and that the Ascensions accepted the loan. They alleged that Saenz and Wilkinson made false representations to them when Saenz made the loan to them. Appellants tendered the $190 into court and prayed that the deed be set aside and cancelled, that appellees be ordered to surrender possession to appellants, and for general relief. There were no exceptions to the pleadings. These pleadings gave notice that the appellants claimed not only that they had been defrauded, but also that the deed was intended as a mortgage to secure Saenz for the money he advanced. The case was tried upon those theories, and the statement of facts shows that all parties so understood the trial from the very inception of the testimony. The pleadings were adequate.

■ ■ It is also urged that appellants failed to preserve the claimed error by an appropriate point in this Court. Appellants' points are that the judgment is contrary to the law, contrary to the evidence, and is not in accordance with equity and good conscience. If there were no more to the points, we would hold that they are too general, but the statement under each of these points is that the transaction was one by which Saenz was obtaining security for his loan of $190 to the Ascensions. We look to the argument under the points, as we have before been instructed to do. Perkins v. Ingalsbe, 1961, Tex.Civ. App., 339 S.W.2d 343; Gleason v. Davis, 155 Tex. 467, 289 S.W.2d 228; Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286, 292; Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478, 482. On the basis of the points, considered with the statement and argument under the points, appellants clearly contend that the deed was given as security only.

We now examine the proof to determine if appellants proved as a matter of

law that the deed was intended as a mortgage. In our opinion, all of the evidence, including the admissions of both Mr. and Mrs. Saenz, supports appellants' contention as to Saenz, but not as to Wilkinson. Saenz was called as the first witness, and after the first nine pages of the statement of facts, Saenz's defense that the transaction was intended as an outright deed to him is left in shambles. Not once, but several times, by direct and unambiguous answers he testified that he loaned the money to the Ascensions. He said it was advanced with the understanding that Jose Ascension was to pay it back. He testified that he went with Ascension to see Mr. Wilkinson, he paid the money to Wilkinson, that it was a loan and Ascension was to reimburse him. He said that Ascension tried to repay it in about four months, that he did not refuse to accept it, but Mrs. Saenz did. In answer to questions by his own attorney, he explained, "Well, I loaned him the money because he was about to lose the lot. He came and told my wife that, and my wife came and told me that it was all right, and so I told her it was up to her." When Saenz was asked to give his reason for refusing to return the lot to appellants, with remarkable candor, he answered, "Well, the value is different now." When asked why the vendor made the deed to him instead of Ascension, Saenz answered, "Well, it was made out to me so that I would make sure I would get my money back." He said that, at the time he gave Wilkinson the $190, "it was merely a loan" and he expected to get his money back. He admitted that at that time he had no intention of keeping the lot. He stated that he told Mr. Wilkinson at the time of the transaction, "That I would lend the money to Ascension * * *. He was going to pay me back."

Mrs. Saenz's testimony is equally direct. She testified, "I told them (Ascensions) I was going to lend them the money, but the deed was going to be in our name until they pay us." When asked if she had expected the grantor to deed the property to them, Mrs. Saenz again testified, "No, sir, until they paid me, then we were going to deed it back to them." She explained that she refused to accept the repayment of the $190 but that she had countered by offering the Ascensions $600 for their interest in the lot, which they refused. She explained why she changed her mind about the loan, saying, "And when they came and went inside the property and took all my plants out, and then I changed my mind, for not having her for a neighbor, because she also accuse me that I had entered into her house and that some of her clothes were taken out of her house and then I didn't want her for a neighbor."

■■ Mr. and Mrs. Ascension testified that the transaction was a loan with security. All of the testimony and the quoted admissions by Mr. and Mrs. Saenz demonstrate that the parties intended the deed from the vendor as security to protect Saenz. A party who testifies as to the existence of a fact is absolutely concluded thereby, unless he makes a correction, retraction, or explains it by reason of some mistake, oversight, misunderstanding, or lack of definite recollection. Griffin v. Superior Ins. Co., Tex.Sup., 338 S.W.2d 415; Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 133 S.W.2d 767, 145 S.W.2d 569; United States Fidelity & Guaranty Co. v. Carr, Tex.Civ.App., 242 S.W.2d 224; 2 McCormick & Ray, Texas Law of Evidence, § 1127. Hence, as a matter of law, the deed to Saenz was a mortgage to secure the repayment of the $190 he advanced on behalf of Ascensions. Wilbanks v. Wilbanks, 160 Tex. 317, 330 S.W.2d 607; Bradshaw v. McDonald, 147 Tex. 455, 216 S.W.2d 972; Kokernot v. Gilstrap, 143 Tex. 595, 187 S.W.2d 368. Wikinson, as the grantor, gave a deed to Saenz, the lender, who advanced the money for Ascension, the purchaser. This fact does not alter the rule. Conway v. Moore, 70 Cal.App.2d 166, 160 P.2d 865; Henry v. Britt, 265 Ill. 131, 106 N.E. 455; Glass v. Hieronymus, 125

Ala. 140, 28 So. 71; 36 Am.Jur. Mortgages, § 128.

The judgment in favor of Wilkinson, however, must be affirmed. There is no evidence that hints that he overreached anyone. His only connection with the transaction was to follow the instructions of Ascension and Saenz by conveying to Saenz instead of Ascension. His only interest was to obtain the money that all parties concede was due him. He could have forfeited the contract with Ascension, but because Ascension had paid most of the installments, he cooperated so he would not lose his investment.

The judgment is accordingly affirmed, insofar as it denies all relief against Wilkinson. As against defendant Saenz, the judgment is reversed and is here rendered that the deed from Wilkinson to Saenz covering the property described in this opinion be declared a mortgage, that Saenz have and recover the $190 tendered into the registry of the court in payment of the Ascensions' debt to Saenz, that the deed to Saenz be cancelled and set aside, and that Ascensions be awarded title and possession of the property. Costs are adjudged against Saenz.

MURRAY, Chief Justice (dissenting).

I do not concur in the opinion of the majority and will now state the reasons for my dissent.

In the opinion of the majority the nature of the suit has not been correctly stated. In their amended petition, appellants correctly stated the nature of their suit as follows: "This is a petition as amended, to set aside deed obtained by fraud; and likewise a petition for specific performance of contract for sale of real estate; * * *." This statement is followed by an allegation to the effect that G. W. Wilkinson and Fielmon Saenz "connived and schemed with one another, with wrongful and fraudulent design of obtaining Plaintiffs' interest" in Block 5, Lot No. 2, Kline Addition, Gregory, San Patricio County, Texas; that in furtherance of said conspiracy and fraud, Saenz pretended to make appellants a loan, and did pay to G. W. Wilkinson the balance due by them on an installment sales contract, and for the paltry sum of $150 Wilkinson proceeded to vest title to Lot No. 2 in Fielmon Saenz on June 13, 1958. Appellants further stated that "in lieu of a note and/or promissory note which Wilkinson * * * was to prepare for the Plaintiffs, the said G. W. Wilkinson without the knowledge of Plaintiffs prepared a Warranty Deed and delivered same direct to Fielmon Saenz for One Hundred and Fifty Dollars," and appellants, believing the parties were acting in good faith, released their installment sales contract with Wilkinson. Later, when they discovered that the entire transaction was nothing more than a fraudulent design on the part of appellees to obtain the interest of the Ascensions in the land, they tendered to appellees the sum of $150, with interest, for the purpose of extinguishing the debt and the "Phoney Deed of Trust" and now "demands that the said G. W. Wilkinson and Fielmon Saenz should convey said premises to the Plaintiffs * * *." Appellants alleged that they had paid the sum of $650 on their installment sales contract with Wilkinson, and only $150 remained unpaid at the time the deed was executed to Saenz, who paid the sum of $190, and although appellants tendered that sum to appellees, they refused to specifically perform the sales contract.

The prayer of the petition is as follows:

"Wherefore Plaintiffs Pray The Court that defendants be cited to appear and answer this petition, and that they have judgment that the conveyance or deed made by G. W. Wilkinson to Fielmon Saenz be canceled, set aside and annulled; and particularly that the Plaintiffs have judgment that Defendant G. W. Wilkinson specifically perform and carry into execution the said articles of agreement under Con-

tract of Deed; and that the Court Determine in Equity And Good Conscience that Fielmon Saenz receive the One Hundred and Ninety Dollars as consideration upon it being determined that conveyance be forthcoming to the Plaintiffs Jose Ascension and Mary Gomez Ascension, husband and wife; and that defendants be ordered to deliver possession of said premises to Plaintiffs, for writ of possession, costs of suit, and for such other and further relief, special and general, in law and in equity, as to the Court shall seem meet and just."

The trial was before the court and resulted in judgment that appellants take nothing. The majority describe this suit as one to declare an instrument in the form of a warranty deed to be only a mortgage. In my opinion the appellants properly described the suit, as above stated, as one based upon fraud and for specific performance. Apparently no one in the trial court treated this suit as one to declare a deed to be a mortgage, and I readily understand why. The trial court had a right to presume that the parties knew what they were doing when they pleaded their case, and that in their prayer they had stated the relief they wanted. McDonald, Texas Civil Practice, Vol. 2, p. 549, § 6.11; p. 602, § 6.25; p. 605, § 6.26. Under the pleadings and prayer, the suit was one seeking to have a deed declared void for fraud, which is inconsistent with a suit to have a deed declared valid but to have it construed as only a mortgage. There is nothing to show that the suit was tried and determined on anything other than the pleadings. Appellants tried to file a trial amendment, but leave to file it was denied. This is inconsistent with the idea that there was a waiver of pleadings.

If the trial court cannot rely upon the body of the petition to determine the nature of the cause of action he is trying, and the prayer to determine the nature of the relief sought by the plaintiffs, then how is he to determine the nature of the cause of action

and the relief sought? The requirements of and the necessity for pleadings have not been entirely abolished. It is true that the parties and the court may waive the insufficiency of pleadings by the way the trial has been conducted. Rules Nos. 45, 67 and 90, T.R.C.P.

Here there was no waiver. An attempt to file a trial amendment was made but overruled. All of the evidence introduced was admissible on the question of a conspiracy and fraud in securing the execution of the deed. There was a failure to prove fraud as alleged and the trial court quite properly denied the relief prayed for by appellants based upon fraud.

Even if this were a suit to have a deed declared a mortgage, the evidence would be insufficient. Before a deed, absolute on its face, can be declared to be only a mortgage it must be shown that the grantor and grantee so intended. 59 C.J.S. Mortgages § 36, p. 72; Perry v. Long, Tex.Civ.App., 222 S.W.2d 460; Duke v. City Nat. Bank of Forney, Tex.Civ.App., 16 S.W.2d 557; Rincon Inv. Co. v. White, Tex.Civ.App., 54 S.W.2d 1052; Brown v. Hempkins, Tex.Civ.App., 38 S.W.2d 173. It is not sufficient that one of the parties, or some third person, not a party to the deed, so intended. The evidence shows that Wilkinson, the grantor, intended the instrument as a deed, and therefore the grantor and the grantee did not mutually intend the instrument as a mortgage. If this deed be declared a mortgage, then Wilkinson owns the fee to the lot, and neither the Ascensions nor Saenz has any title to the property. An instrument cannot be a conveyance and a mortgage at one and the same time. The Ascensions have fully released their installment sales contract and in the absence of fraud they have no further interest therein. Wilkinson, in executing the deed, did what both the Ascensions and Saenz requested him to do, so he should not now be required to do anything further.

Appellants have not, in the body of their petition nor in their prayer, asked that this

 

deed be declared a mortgage, and it certainly would not help them to have it so declared, for in such event neither appellants nor Saenz would have any title to the property. I am fully aware that a person can mortgage his property to secure the indebtedness of a third person not a party to the mortgage. Take, for instance, a father may mortgage his own property to secure the indebtedness of his son to a third person. The son owns no interest in the land and the father was in no way obligated to assume the indebtedness. If the debt is not paid there can be a foreclosure of the mortgage and the father's property will be sold to pay the son's debt, but if the indebtedness is fully paid the property is owned by the father free of the indebtedness. The son does not become the owner of the father's land simply because he paid his own indebtedness. Here, if Wilkinson gave a mortgage upon his own land to secure the indebtedness of Ascensions to Saenz and if Ascensions paid or tendered payment of their indebtedness to Saenz, then the mortgage lien should be released and Wilkinson would have his land free from the mortgage. It occurs to me that what appellants needed here was not to have the deed set aside as a conveyance, but to have it confirmed as a deed and to have Saenz declared to hold the land in trust for the Ascensions, subject to their payment of the $190 indebtedness. The evidence tends to show that Ascensions were relying upon an oral agreement on the part of Saenz to convey the property to them upon payment of the $190. A naked parol promise to convey land is rendered unenforcible by the statute of frauds. Art. 3995, § 4, Vernon's Ann.Civ.Stats.

We may speculate as to the best remedy which the Ascensions might have asked for under the facts, but all they did ask for in their pleadings was that the entire transaction be set aside for fraud, and that Wilkinson be required to specifically perform the original installment sales contract. They failed to show fraud, and the trial court properly refused appellants the remedy they sought. The trial court could not properly have done otherwise. McDonald, Texas Civil Practice, p. 606, § 6.26, where it is stated:

"Assuming that the parties by proper objection have confined the dispute to the area mapped by the pleadings, the court can not, under the present practice, properly allow under a general prayer any relief which is inconsistent with the theory or theories outlined in the petition."

I would affirm the judgment.