HEAGERTY-final 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-014-CV





NANCY HEAGERTY,



 APPELLANT


vs.





JOHN F. K. MCGILL,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT



NO. 485,308, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING



 





 Nancy Heagerty appeals the trial court's rendition of a take-nothing judgment on
a jury verdict in her legal malpractice suit against John F. K. McGill. We will affirm the trial
court's judgment.



BACKGROUND


 This dispute arises from a residential real-estate transaction in which the buyer and
seller set out to structure their deal to mislead the lender and to conceal the true details of the
transaction. Heagerty, the seller, and Tom Hutchison, who was the buyer together with his
spouse, were both experienced real-estate brokers. Heagerty hired McGill, an attorney, to
prepare and review certain documents pertaining to the transaction. The scope of McGill's employment and the extent of his involvement in the transaction and knowledge of its true nature
are disputed.

 Heagerty and the Hutchisons entered into a fairly complicated transaction for the
sale of Heagerty's Austin home (the "Austin property"). Basically, the Hutchisons would obtain
seventy-five percent of the purported purchase price by a loan from Capitol City Savings
Association ("Capitol City"), which would be secured by a first lien on the Austin property and
would represent to the lender that the Hutchisons were making a twenty-five percent down
payment. This representation was false.

 Instead, Heagerty planned to owner-finance the remaining twenty-five percent of
the purchase price and to receive an undisclosed second lien on the Austin property as well as an
undisclosed first lien on property the Hutchisons owned in Fort Bend County (the "Fort Bend
property"). As a result, the Hutchisons would not make any cash contribution to the purchase
price, and in fact would receive a substantial "refund" or "kickback" of a portion of the Capitol
City loan proceeds at closing.

 Capitol City's lending policies prohibited this sort of financing; therefore, Heagerty
and the Hutchisons went to great lengths to conceal the true nature of their scheme from Capitol
City. Separate contracts and closing documents were prepared for submission to Capitol City that
did not reflect the owner-financing arrangements of the deal between Heagerty and the
Hutchisons, the second lien on the Austin property, or the "refund" to the Hutchisons.

 Significantly, as part of the closing documentation, Heagerty and the Hutchisons
signed an Affidavit of Purchaser and Vendor ("the affidavit") and a closing statement that
indicated that the buyers paid the portion of the purchase price not financed by Capitol City in
cash by the buyers and that no secondary financing was involved in the transaction.

 Relying on information the Hutchisons provided, McGill prepared a real-estate lien
note reflecting the Hutchisons' debt to Heagerty and a single deed of trust covering both the
Austin and Fort Bend properties. (1) The property description of the Fort Bend property in the deed
of trust was incorrect. In any event, the deed of trust was recorded in Travis County (apparently
by the title company) but was never recorded in Fort Bend County. McGill did not participate
in the closing, which was conducted by an officer of the title company retained by Heagerty and
the Hutchisons. The parties dispute who had the duty to ensure the proper recording of the deed
of trust.

 Subsequently, the Hutchisons defaulted on their obligations to Heagerty and Capitol
City and filed bankruptcy. Capitol City's foreclosure of its lien on the Austin property
extinguished Heagerty's second lien on that property. Heagerty's unperfected lien on the Fort
Bend property was avoided in the Hutchisons' bankruptcy proceeding. The Hutchisons' debt to
Heagerty was discharged as an unsecured debt.

 Heagerty sued McGill alleging legal malpractice. She alleged that McGill was
negligent in using an incorrect property description in the deed of trust and in failing to file the
deed of trust in Fort Bend County and that he breached his fiduciary duty to her. (2) At trial, the
jury returned a verdict finding that (1) Heagerty and McGill were each fifty percent negligent, (2)
Heagerty incurred $41,500 in total damages, (3) McGill did not breach his fiduciary duty to
Heagerty, (4) Heagerty was not entitled to exemplary damages, and (5) Heagerty had intentionally
or knowingly made a materially false or misleading representation to obtain property or credit for
herself or others. Based upon these findings, the trial court rendered a take-nothing judgment in
favor of McGill. Heagerty now brings five points of error on appeal; McGill brings one cross-point.



DISCUSSION AND HOLDING


 To recover in a suit for legal malpractice, the plaintiff must show that she would
have prevailed on its underlying claim but for the attorney-defendant's negligence. Cosgrove v.
Grimes, 774 S.W.2d 662, 665-66 (Tex. 1989); Jackson v. Urban, Coolidge, Pennington & Scott,
516 S.W.2d 948, 949 (Tex. Civ. App.--Houston [1st Dist.] 1974, writ ref'd n.r.e.); Gibson v.
Johnson, 414 S.W.2d 235, 238-39 (Tex. Civ. App.--Tyler 1967, writ ref'd n.r.e.), cert. denied,
390 U.S. 946 (1968). Any defense that would have been available to defeat the underlying claim
is available to the attorney-defendant to defeat the legal malpractice claim. Gibson, 414 S.W.2d
at 239. As a defense to the malpractice claim, McGill urged that the transaction between
Heagerty and the Hutchisons was tainted with illegality that rendered the lien on the Fort Bend
property unenforceable. McGill argued that, therefore, Heagerty could show no damages
resulting from his alleged negligence. The trial court agreed and, based on the jury finding that
Heagerty intentionally or knowingly made a false or misleading statement to obtain property or
credit for herself or others, rendered a take-nothing judgment. 

 In her first point of error, Heagerty contends that the jury verdict did not support
the take-nothing judgment. (3) We initially determine whether the trial court was correct in
concluding that McGill was entitled to a take-nothing judgment based upon the jury finding that
Heagerty had intentionally or knowingly made materially false or misleading representations to
obtain property or credit for herself or others.

 McGill relies on Kokernot v. Gilstrap, 187 S.W.2d 368 (Tex. 1945), for his theory
that a taint of illegality in the transaction bars enforcement of any aspect of the transaction. See
also Cain v. Franklin, 476 S.W.2d 952 (Tex. Civ. App.--Austin 1972, writ ref'd n.r.e.). The
alleged illegality is Heagerty's concealment of the owner-financing scheme from Capitol City. 
The jury was asked to answer a question that mirrored the language of section 32.32(b) of the
Texas Penal Code. (4) Assuming for this discussion that the evidence is sufficient to support the jury
findings, the affirmative jury finding on this question indicates that Heagerty's representations to
Capitol City were illegal. The question therefore is whether this illegal aspect of the transaction
would have prevented enforcement of the lien on the Fort Bend property and now precludes any
damages for McGill's alleged negligence.

 In Kokernot and numerous other cases, the courts have taken the position that when
faced with an illegal contract, the court will leave the parties where it finds them and not enforce
the contract provisions. The facts in Kokernot are similar to those here. Upon the sale of their
home to the Kokernots, the Gilstraps retained a second lien in violation of Federal Housing
Administration rules. Nonetheless, the parties signed a statement to the FHA to the contrary. 
Kokernot, 187 S.W.2d at 369. The court refused to enforce the Gilstraps' second lien. Id. at
370; see also Dominguez v. Trent, 836 S.W.2d 677, 679 (Tex. App.--El Paso 1992, no writ).

 The courts have not, however, applied this rule to prevent enforcement of every
claim connected to an illegal transaction. The test for whether a claim connected with an illegal
transaction may be enforced at law is whether the claim may be established without reliance on
the illegal transaction. Kokernot, 187 S.W.2d at 370; Pioneer Mut. Compensation Co. v. Diaz,
177 S.W.2d 202, 203 (Tex. 1944); Tubb v. Kramer Bros. Nurseries, 237 S.W.2d 680, 682 (Tex.
Civ. App.--Waco 1951, writ ref'd n.r.e.). Even if a transaction is illegal, a recovery may still be
had if the plaintiff requires no aid from the illegal transaction to establish his case. Morrison v.
City of Fort Worth, 155 S.W.2d 908, 910 (Tex. 1941); see also Plumlee v. Paddock, 832 S.W.2d
757, 759 (Tex. App.--Fort Worth 1992, writ denied); International Aircraft Sales, Inc. v.
Betancourt, 582 S.W.2d 632, 635 (Tex. Civ. App.--Corpus Christi 1979, writ ref'd n.r.e.). In
other words, the fact that a claim is shown to be incidentally connected with an illegal transaction
does not necessarily defeat the right to recovery on that claim. Frost Nat'l Bank v. Mitchell, 362
S.W.2d 198, 200 (Tex. Civ. App.--Waco 1962, no writ).

 McGill's defense that a taint of illegality bars enforcement of the underlying claim
requires both a finding that an illegal act was committed in connection with a contract and a
finding that proof of this illegal act is necessary to the claim under the contract. In the immediate
case, the first element was submitted to the jury, but the second was not. 

 When a ground of recovery or a defense consists of more than one element, if some
elements are submitted and other elements are omitted from the charge, the omitted elements will
be deemed found by the trial court to support the judgment, provided no objection is made and
the omitted element is supported by some evidence. Tex. R. Civ. P. 279; Ramos v. Frito-Lay,
Inc., 784 S.W.2d 667, 668 (Tex. 1990); Turner, Collie & Braden, Inc. v. Brookhollow, Inc., 642
S.W.2d 160, 165 (Tex. 1982); Bank of Austin v. Barnett, 549 S.W.2d 428, 429 (Tex. Civ.
App.--Austin 1977, no writ). Neither Heagerty nor McGill objected to the omission of the second
element of the defense. Therefore, any objection to the omission is waived. Tex. R. Civ. P. 279;
Rodgers v. RAB Invs., Ltd., 816 S.W.2d 543, 550 (Tex. App.--Dallas 1991, no writ).

 We must determine whether there is some evidence to support a deemed finding
that Heagerty must rely on an illegal aspect of the transaction to prove her claim on the Fort Bend
property. On this issue, Kokernot is distinguishable from the immediate case because there the
seller sought to enforce the second lien. In the immediate case, however, Heagerty seeks damages
resulting from the elimination of her lien on the Fort Bend property, not the second lien on the
Austin property. 

 Heagerty argues that the only illegal aspect of the transaction was her execution of
the affidavit. Heagerty contends that there is no evidence that she had the requisite intent when
she signed the affidavit, that she did not read it, and that she relied on McGill to review the
legality of the transaction and the affidavit. Heagerty urges that, because the second lien was not
an important element of the transaction, its illegality was not such as to prevent enforcement of
other aspects of the transaction. We disagree.

 The record shows a deliberate scheme by Heagerty to conceal the true nature of the
deal from Capitol City. Her signing of the affidavit was merely one aspect of the subterfuge. As
part of their loan application, the Hutchisons presented a contract to Capitol City that did not
reflect the owner-financing and directed the title company to prepare closing documents that did
not include the information of this aspect of the deal. There is evidence that Heagerty knew this
and participated in the concealment. Heagerty also signed two documents used to perpetuate the
misrepresentation: the affidavit and the closing statement.

 The important information that was withheld from Capitol City was not only the
existence of the second lien on the Austin property or the first lien on the Fort Bend property. 
Rather, it was the existence of the entire owner-financing arrangement that allowed the Hutchisons
to purchase the Austin property with no down payment whatsoever. In fact, as a result of the
owner-financing arrangement, the Hutchisons not only made no down payment, but also received
a large "refund" from the Capitol City loan proceeds at closing. Accordingly, the Hutchisons had
a negative equity position in the Austin property.

 In itself, the second lien had no effect on Capitol City's security; indeed, Capitol
City was able to extinguish this lien by foreclosure of its superior interest. The lack of any equity
in the Austin property undermined Capitol City's security for its loan, not the fact that a second
lien existed on the Austin property.

 The evidence shows that both the lien on the Fort Bend property and the lien on
the Austin property served as collateral for Heagerty's owner-financing. A single deed of trust
covered both properties. We do not believe that isolating the undisclosed second lien from
consideration eliminates the taint from this transaction. Heagerty's lien on the Fort Bend property
is an integral and inseparable part of the owner-financing scheme, the non-disclosure of which the
jury found illegal.

 We conclude that there is some evidence to support a deemed finding that proof of
an illegal aspect of the transaction was required to enforce the lien on the Fort Bend property. 
Accordingly, the trial could properly have made the deemed findings to support the take-nothing
judgment. We overrule Heagerty's first point of error.

 In her third point of error, Heagerty contends that the trial court erred in submitting
the jury question of whether she intentionally or knowingly made materially false and misleading
statements to obtain property or credit for herself or others because no evidence supports this
submission. In deciding a no-evidence point, we must consider only the evidence and inferences
tending to support the finding of the trier of fact and disregard all evidence and inferences to the
contrary. Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593 (Tex. 1986), cert. denied, 111
S.Ct. 135 (1990); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965); see generally William
Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex.
L. Rev. 515 (1991). The affidavit and closing statement Heagerty signed are in the record, as is
extensive testimony about all aspects of the transaction. The record contains circumstantial
evidence from which Heagerty's state of mind could be inferred. We conclude that there is some
evidence in the record to support the submission of this issue to the jury. We overrule Heagerty's
third point of error.

 In her fifth point of error, Heagerty contends that the trial court erred in allowing
expert testimony that she violated section 32.32 of the Texas Penal Code because the expert was
not qualified as an expert in criminal law and his testimony was speculative, consisted of
inadmissible legal issue testimony, and was not based on proper legal definitions.

 To show reversible error in the admission of testimony, Heagerty must show that
the admission was erroneous and was reasonably calculated and probably did cause the rendition
of an improper judgment. McKinney v. National Union Fire Ins. Co., 772 S.W.2d 72, 75 (Tex.
1989); Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989). The proffered
expert, an attorney, gave his opinion on the actions of the parties to this suit. Heagerty complains
of his opinion testimony that she violated section 32.32 by signing the affidavit. The opinion
testimony was based on evidence previously admitted. As discussed above, there is extensive
evidence in the record other than this opinion testimony demonstrating Heagerty's actions and her
state of mind. If the complained-of evidence is cumulative of other evidence properly admitted,
any error in its admission is harmless. Gee, 765 S.W.2d at 396; McInnes v. Yamaha Motor
Corp., U.S.A., 673 S.W.2d 185, 188 (Tex. 1984), cert. denied, 469 U.S. 1107 (1985). The
question of whether Heagerty made an intentional or knowing misrepresentation was ultimately
presented to the jury without reference to section 32.32. Considering the record as a whole, we
conclude that Heagerty has failed to show a probability of an improper verdict resulting from this
testimony. We overrule her fifth point of error.

 In her second point of error, Heagerty contends that there is no evidence to support
the finding that she was negligent. In light of our disposition of the points of error discussed
above, we need not reach this point of error.

 In her fourth point of error, Heagerty contends that the trial court abused its
discretion in denying her the opportunity to show good cause for not supplementing her
interrogatory answers and in excluding evidence for such failure to supplement under Rule 215(5)
of the Texas Rules of Civil Procedure. The excluded evidence consisted of testimony on the
Texas Disciplinary Rules of Professional Conduct as the rules apply to the alleged breach of
fiduciary duty. The trial court disallowed the testimony under Rule 215(5) because Heagerty had
failed to respond to a discovery request for her expert witnesses' anticipated testimony.

 Heagerty unsuccessfully alleged good cause for failing to supplement her discovery
responses. She now alleges that the trial court erred in refusing to allow an offer of proof on good
cause. However, the trial court expressly gave Heagerty an opportunity to make an offer of proof
on the excluded testimony on breach of fiduciary duty, and Heagerty declined. Thus, even
assuming that good cause existed for Heagerty's failure to supplement and the trial court erred in
excluding the testimony on the disciplinary rules, the error is waived. Tex. R. Civ. Evid. 103;
Texas Employers' Ins. Co. v. Garza, 557 S.W.2d 843, 847 (Tex. Civ. App.--Corpus Christi 1977,
writ ref'd n.r.e.). We overrule Heagerty's fourth point of error.

 In one cross-point, McGill contends there is no properly admitted evidence of the
value of the Fort Bend property in the record. Having found no error in the rendition of the take-nothing judgment, we do not reach this cross-point.



CONCLUSION


 We affirm the judgment of the trial court.



 

 Jimmy Carroll, Chief Justice

[Before Chief Justice Carroll, Justices Jones and Kidd]

Affirmed

Filed: May 12, 1993

[Do Not Publish]
1.   The paper work for the Capitol City loan was prepared by its counsel.
2.   McGill brought in several entities and individuals as third-party defendants. These
defendants have either settled the claims against them and been dismissed or have had the
cause of action against them severed from this cause for separate trials. 
3.   Heagerty argues that the standard of review for an instructed verdict applies to a
take-nothing judgment and this Court should reverse the judgment if there is some
evidence that she did not sign the affidavit intentionally or knowingly. We do not believe
that this is the proper standard of review in the immediate case, where we are presented
with a take-nothing judgment rendered on jury findings that the trial court found
precluded recovery. We will apply the proper standard of review and presumptions to
each issue presented.
4.   This section provides, in part, "A person commits an offense if he intentionally or
knowingly makes a materially false or misleading written statement to obtain property or
credit for himself or another." Tex. Penal Code Ann. § 32.32(b) (West 1989).